UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| DONNA OPULENTO, ON BEHALF OF HER DAUGHTER JESSICA FORTSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; AND FRANK HAMPP, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>STATE OF HAWAII DEPARTMENT OF PUBLIC SAFETY, NOLAN ESPINDA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; GAVIN TAKENAKA, HEALTH CARE DIRECTOR, HAWAII DEPARTMENT OF PUBLIC SAFETY, CORRECTIONS DIVISION; AND  DOES 1-30,<br><br>                    Defendants. | CIV. NO. 19-00315 LEK-RT |

**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

On February 11, 2022, Plaintiffs Donna Opulento ("Opulento"), on behalf of her daughter, Jessica Fortson ("Fortson"); and Frank Hampp ("Hampp"), both individually and on behalf of all others similarly situated (collectively "Plaintiffs") filed their Motion for Class Certification ("Motion").  [Dkt. no. 75.]  On April 22, 2022, Defendants State of Hawaii Department of Public Safety ("DPS"), Nolan Espinda ("Espinda"), and Gavin Takenaka ("Takenaka" and collectively "Defendants") filed their memorandum in opposition to the

Motion.  [Dkt. no. 83.]  Plaintiffs filed their reply on
April 29, 2022.  [Dkt. no. 85.]  The Motion came on for hearing
on May 13, 2022.  See Minutes, filed 5/13/22 (dkt. no. 89).  The
Motion is hereby granted for the reasons set forth below.

<u>**BACKGROUND**</u>

The operative pleading in the instant action is
Plaintiffs' First Amended Class Action Complaint for Injunctive
and Declaratory Relief ("First Amended Complaint"), filed on
December 12, 2019.  [Dkt. no. 15.]  According to Plaintiffs, DPS
is authorized and required under Hawai`i law to "establish and
adhere to procedures and policies to ensure the physical,
emotional, and mental health and safety of prisoners under its
jurisdiction."  [First Amended Complaint at ¶ 15.]  DPS operates
at least eight correctional facilities in Hawai`i and "houses
over 1,400 inmates from Halawa [Correctional Facility ('HCF')]
at an out-of-state facility in Arizona."  [Id. at ¶ 16.]
Plaintiffs allege "DPS has a policy and practice of failing to
provide sufficient mental health care to more than 1,000
individuals with serious mental health needs in its prisons and
jails."  [Id. at ¶ 32.]  Plaintiffs further allege Defendants
failed to provide necessary mental health treatment to Fortson,
Hampp, and others similarly situated.  [Id. at ¶ 34.]  The
failure to treat inmates with Serious Mental Illness ("SMI") or
Serious and Persistent Mental Illness ("SPMI") "stem[s] from

2

severe staff shortages in the Heath Care Division" within DPS.
[Id. at ¶ 37.]  The staff shortage allegedly led to, among other
things, inadequate mental health screening, untimely responses
to mental health crises, improper treatments, and the failure to
formulate pre-release discharge planning for inmates suffering
from mental health issues.  See, e.g., id. at ¶¶ 45, 47, 50, 53.

Plaintiffs state Fortson was incarcerated at a DPS
correctional facility "when she committed suicide on July 11,
2017." [Id. at ¶ 72.]  Fortson suffered from numerous mental
illnesses, including schizophrenia, bipolar disorder, attention-
deficit hyperactivity disorder, post-traumatic stress disorder,
and borderline personality disorder.  Fortson was never placed
in a mental health unit, although she informed the correctional
staff that she wanted to speak with a mental health professional
for treatment and that she was suicidal.  Fortson's requests for
assistance were allegedly ignored, even after a failed suicide
attempt.  See id. at ¶¶ 73-78.

According to the First Amended Complaint, Hampp "is
currently a pre-trial detainee" at one of DPS's correctional
facilities.  [Id. at ¶ 83.]  Hampp was allegedly diagnosed with
bipolar I disorder in 2014.  Plaintiffs state Hampp was not
provided mental health evaluations or medication for his
disorder throughout multiple incarcerations in 2017 and 2018.
See id. at ¶¶ 84-86.  Plaintiffs allege that, as a result of not

3

receiving medication, Hampp became suicidal, [id. at ¶ 87,] and during transportation to the recreational center within the correctional facility he was detained at, Hampp "threw himself over the balcony in an attempt to kill himself," [id. at ¶ 88]. Hampp "survived his suicide attempt but is now a paraplegic." [Id.]

Plaintiffs bring the following claims: (1) a 42 U.S.C. § 1983 claim against Defendants for violation of Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment ("Count I"); (2) a § 1983 claim against Defendants for violation of Plaintiffs' Fourteenth Amendment right to procedural due process ("Count II"); (3) a § 1983 claim against Defendants for failure to train or supervise ("Count III"); (4) a claim against Defendants for violations of the Americans with Disabilities Act ("ADA"), pursuant to 42 U.S.C. § 12132 and 29 C.F.R. § 35.152(b)(1) ("Count IV"); and (5) a claim against Defendants for violations of § 504 of the Rehabilitation Act, pursuant to 29 U.S.C. § 794 ("Count V").

Plaintiffs' proposed class is:

> All persons who are now, or will in the future be, incarcerated in a jail or prison operated by the State of Hawaii, Department of Public Safety, and who have a Serious Mental Illness or a Serious and Persistent Mental Illness as defined by Department of Public Safety Policy No. COR.10.1G.04 (the "Class").

4

[Mem. in Supp. of Motion at 3 (citing Exh. A).[1]]  Plaintiffs seek: certification of the proposed Class; injunctive and declaratory relief against Defendants; the appointment of a Special Master to operate the mental health branch of the DPS Corrections Division; and any other appropriate relief. Defendants oppose certification of the proposed Class.

## STANDARD

Fed. R. Civ. P. 23 states, in pertinent part:

(a)  Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1)  the class is so numerous that joinder of all members is impracticable;

(2)  there are questions of law or fact common to the class;

(3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)  the representative parties will fairly and adequately protect the interests of the class.

(b)  Types of Class Actions.  A class action may be maintained if Rule 23(a) is satisfied and if:

. . . .

(2)  the party opposing the class has acted or refused to act on grounds that apply

---

[1] Exhibit A is the Department of Public Safety, Corrections and Administration Policy and Procedures Policy No. COR.10.1G.04, dated March 9, 2010, regarding Mental Health Services.  [Motion, Decl. of Kevin A. Yolken ("Yolken Decl."), Exh. A.]

> generally to the class, so that final
> injunctive relief or corresponding
> declaratory relief is appropriate respecting
> the class as a whole . . . .

The Rule 23(a) requirements are known as:
"(1) numerosity; (2) commonality; (3) typicality; and
(4) adequacy of representation." Parsons v. Ryan, 754 F.3d 657,
674 (9th Cir. 2014). "Class certification is proper only if the
trial court has concluded, after a 'rigorous analysis,' that
Rule 23(a) has been satisfied." Id. (some citations and
internal quotation marks omitted) (quoting Wal-Mart Stores, Inc.
v. Dukes, --- U.S. ----, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d
374 (2011)). "The class action is an exception to the usual
rule that litigation is conducted by and on behalf of the
individual named parties only." Wal-Mart, 564 U.S. at 348
(citation and internal quotation marks omitted). The Ninth
Circuit has stated:

> In evaluating whether a party has met the
> requirements of Rule 23, we recognize that
> "Rule 23 does not set forth a mere pleading
> standard." Wal-Mart, 131 S. Ct. at 2551. We
> therefore require a party seeking class
> certification to "affirmatively demonstrate his
> compliance with the Rule—that is, he must be
> prepared to prove that there are **in fact**
> sufficiently numerous parties, common questions
> of law or fact, etc." Id. Similarly a party
> must affirmatively prove that he complies with
> one of the three subsections of Rule 23(b).

Parsons, 754 F.3d at 674 (emphasis in Parsons).

## DISCUSSION

Defendants argue certification of Plaintiffs' proposed Class is inappropriate because Plaintiffs fail to: (1) demonstrate commonality and typicality; and (2) meet the requirements of Fed. R. Civ. P. 23(b)(2).  Although Defendants do not contest numerosity or the adequacy of representation, the Court must evaluate whether Plaintiffs meet all of the requirements of Rule 23.  See Parsons, 754 F.3d at 674.  The Court therefore addresses the relevant Rule 23 requirements in turn.

## I.   Rule 23(a) Requirements

### A.   Numerosity

The "'numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.'"  A.B. v. Hawaii State Dep't of Educ., 30 F.4th 828, 835 (9th Cir. 2022) (quoting General Tel. Co. of the NW., Inc. v. EEOC, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980)).  "Courts, however, have found the numerosity requirement to be satisfied when a class includes at least 40 members."  Davis v. Four Seasons Hotel Ltd., 277 F.R.D. 429, 435 (D. Hawai`i 2011) (collecting cases).

Plaintiffs state "the evidence indicates there are likely several hundred inmates who meet the Class definition that are currently incarcerated in DPS facilities, and there

7

will be many hundreds and thousands in the future."  [Mem. in
Supp. of Motion at 10 (citing Exh. H, at 3).[2]]  Moreover,
Plaintiffs state that, "[a]t Oahu Community Correctional Center
[('OCCC')] alone—just one of eight DPS facilities statewide—
there are currently forty five inmates housed in Module 11 which
is designed for individuals with SMI who are unable to reside in
the general population."  [Id. at 11–12 (citing Exh. H, at 3).]

Williamson has worked as a DPS Human Services
Professional since August 2014.  [Williamson Decl. at ¶ 3.]
Williamson "checked the DPS system for the number of SMI
Detainees currenting housed in Module 11 and there were 45."
[Id. at ¶ 12.]  Plaintiffs, therefore, provide sufficient
evidence that at least one DPS facility – OCCC – has over forty-
five individuals who meet the Class definition.[3]

Additionally, Plaintiffs state "the practicability of
joinder is further complicated by the inherently transient
nature of inmates and the distribution of putative Class members

---

[2] Exhibit H is the Declaration of Calvert Williamson
("Williamson Decl.").  [Yolken Decl., Exh. H.]  Mr. Williamson
is a DPS "Human Services Professional III . . . at [OCCC]."
[Id. at ¶ 3.]

[3] Defendants argue the Court should not consider statements
in the Williamson Declaration because Williamson is not
qualified to make the observations in his declaration.  See Mem.
in Opp. at 8.  However, evidence does not need to be admissible
to be considered at the class certification stage.  See Sali v.
Corona Reg'l Med. Ctr., 909 F.3d 996, 1004 (9th Cir. 2018).
Defendants' argument is therefore unpersuasive.

across all eight facilities operated by DPS." [Id. at 13
(citation omitted).]  The Ninth Circuit has held that "when
. . . a class's membership changes continually over time, that
factor weighs in favor of concluding that joinder of all members
is impracticable." A.B., 30 F.4th at 828 (citations omitted).
The Court therefore concludes that Plaintiffs have provided
sufficient evidence to fulfill the numerosity requirement
because there are at least forty-five individuals that meet the
Class definition, and the transient nature of the proposed Class
would make joinder impractical.

     **B.**   **Commonality**

     "Commonality requires the plaintiff to demonstrate
that the class members have suffered the same injury[.]" Wal-
Mart, 564 U.S. at 349-50 (citation and internal quotation marks
omitted).  Plaintiffs' "claims must depend upon a common
contention" such that "it is capable of classwide resolution—
which means that determination of its truth or falsity will
resolve an issue that is central to the validity of each one of
the claims in one stroke." Id. at 350.  "[W]hen inmates provide
sufficient evidence of systemic and centralized policies or
practices in a prison system that allegedly expose all inmates
in that system to a substantial risk of serious future harm,
[the commonality requirement] is satisfied." Parsons, 754 F.3d
at 684.  "[T]hreadbare allegations that a group is exposed to

illegal policies and practices are [not] enough to confer commonality." Id. at 683.

Defendants argue Plaintiffs have not offered "actual evidence of a systematic policy or practice that exposes inmates to a substantial risk of harm . . . ." [Mem. in Opp. at 11.] Defendants also contend that Plaintiffs' proffered evidence is nothing like the evidence in Parsons. [Id.] In Parsons, the Ninth Circuit held that the plaintiffs "far exceeded" the evidence needed to meet the commonality requirement because they submitted "four thorough and unrebutted expert reports, the detailed allegations in the 74-page complaint, hundreds of internal [Arizona Department of Corrections] documents, and declarations by the named plaintiffs . . . ." 754 F.3d at 683.

As an initial matter, "'[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Wal-Mart, 564 U.S. at 351 (some quotation marks and citations omitted) (quoting Gen. Tel. Co. of the SW v. Falcon, 457 U.S. 147, 160 (1982)). Notably, however, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans &

Tr. Funds, 568 U.S. 455, 466 (2012) (some citations omitted)
(citing Wal-Mart, 564 U.S. at 351 n.6).

In the instant case, Plaintiffs submit an Expert
Witness Report to the Court by Mark R. Mitchell, Ph.D., dated
November 15, 2021.  See generally Yolken Decl., Exh. B
("Mitchell Report").  Dr. Mitchell was a Mental Health
Administrator for DPS from September 2008 to September 2017, and
he authored "the policies and procedures that governed the
operation of mental health services at all prisons and jails
throughout the Hawaiian Islands."  [Mitchell Report at PageID
#: 517.]  Dr. Mitchell "was retained by [DPS] under advice from
the Federal Department of Justice, who were in litigation with
[DPS] over poor mental health conditions at [OCCC]."  [Id.]
Dr. Mitchell states he had "the understanding that the policies
and procedures written . . . would be implemented system-wide,
and over the next few years all [DPS] correctional facilities
would be required to comport with those policies and
procedure[s]."  [Id.]  The policies and procedures written by
Dr. Mitchell are "essentially unchanged from when [he] wrote
them."  [Id.]

Defendants argue that, because Dr. Mitchell "found
that current DPS policies remain compliant with [the United
States Department of Justice ('DOJ')] requirements," Plaintiffs'
evidence does not support their claims.  [Mem. in Opp. at 11.]

11

Defendants misunderstand.  Even if DPS's formal policies are
compliant with DOJ requirements on their face, Plaintiffs
assert, *inter alia*, that DPS has practices that "are
deliberately indifferent to the health and safety to the
Seriously Mentally Ill."  [Mem. in Supp. of Motion at 15.]
Parsons makes clear "that prison officials are constitutionally
prohibited from being deliberately indifferent to policies and
**practices** that expose inmates to substantial risk of serious
harm."  754 F.3d at 677 (emphasis added) (citations omitted).
Plaintiffs allege "Defendants are and were, at all times
relevant, policymakers for the DPS and in that capacity
established policies, procedures, customs, and/or practices for
the same."  [First Amended Complaint at ¶ 98.]  Plaintiffs
further allege "Defendants acted and continue to act with
willful and deliberate disregard for Inmates and the proposed
Class members' safety and mental health by failing to enact
and/or follow appropriate policies, procedures, and regulations
to respond to the needs of mentally-ill inmates and prevent
suicides and mental health-related injuries."  [Id. at ¶ 99.]

        The Mitchell Report supports Plaintiffs' allegations
that DPS failed to enact or follow appropriate policies and
procedures, at least for purposes of determining class
certification.  Dr. Mitchell outlined ten possible policy
compliance issues related to Fortson's case, see Mitchell Report

at PageID #: 518–19, and seven policy compliance issues related

to Hampp's case, see id. at PageID #: 526.  Dr. Mitchell also

highlighted eight policy violations that occurred in both cases.

See id. at PageID #: 527.

      Furthermore, Plaintiffs allege:

      Defendants . . . engaged and continue to engage
      in a policy and practice of failing to:

>     a.  Hire sufficient qualified mental health
> staff to diagnose and treat its mentally-ill
> population;
>
>     b.  Provide adequate training to its
> correctional staff regarding mentally-ill
> inmates, including how to respond to their
> requests for treatment;
>
>     c.  Train and supervise correctional staff
> to ensure suicidal and mentally-ill inmates
> are not placed in solitary confinement to
> punish them for behavior related to their
> mental illness or suicidal ideation;
>
>     d.  Train and supervise correctional staff
> to ensure that suicide watch protocol is
> followed;
>
>     e.  Train and supervise correctional staff
> to ensure mentally-ill inmates receive
> appropriate and comprehensive mental health
> treatment plans;
>
>     f.  Train and supervise correctional staff
> to ensure mentally-ill inmates receive a
> mental health evaluation and the proper
> prescription upon release to the general
> public;
>
>     g.  Train and supervise DPS correctional
> staff who monitor suicidal inmates (*i.e.*,
> although suicidal inmates are required to be
> monitored once every five to fifteen

> minutes, correctional staff typically only
> look at their video surveillance monitors
> two to three times throughout an eight-hour
> shift); and
>
> h.   Train and supervise staff with respect
> to reporting and/or responding to violations
> of mentally-ill inmates' Constitutional
> rights, among other things.

[First Amended Complaint at ¶ 138.a–h.]  Plaintiffs' allegations

regarding DPS's failure to hire qualified mental health staff

"presents questions of law and fact common to all members of the

putative class."  See Parsons, 754 F.3d at 679.  For instance,

> [e]ither [DPS] employs enough [mental health
> staff] to provide adequate care to all of its
> inmates [with SMI or SPMI] or it does not do so;
> there is no need for an inmate-by-inmate
> inquiry to determine whether all inmates [with SMI or
> SPMI] in [DPS] custody are exposed to a
> substantial risk of serious harm by [DPS]
> staffing policies.

See id. at 680 (citation omitted).  "The question whether

[DPS's] staffing policies pose a risk of serious harm to all

[DPS] prisoners [with SMI or SPMI] can thus be answered as to

the entire class 'in one stroke.'"  See id. at 679–80 (quoting

Wal-Mart, 131 S. Ct. at 2551).

        The same reasoning applies to Plaintiffs' other

allegations relating to DPS's failure to train and supervise

staff.  See, e.g., First Amended Complaint at ¶¶ 138.b–h.

Defendants, however, contend that the individual claims of the

proposed Class representatives lack merit.  Defendants argue

14

that, although the Mitchell Report "contain[s] allegations of
the failure to comply with DPS policies," Defendants' expert
witness, Joel A. Dvoskin, Ph.D., found that DPS was "not
negligent" in Fortson and Hampp's situations.  See Mem. in Opp.
at 12; see also Defendants' Disclosure of Expert Witnesses,
filed 9/2/20 (dkt. no. 32), Exh. A (Expert Report of Joel A.
Dvoskin, Ph.D., dated 8/31/20 ("Dvoskin Report")) at 20.
Defendants also argue Plaintiffs' claims lack merit because the
Mitchell Report "is silent on causation, negligence or
deliberate indifference."  [Mem. in Opp. at 12.]  Defendants'
arguments are misplaced.  "The district court is required to
examine the merits of the underlying claim . . . only inasmuch
as it must determine whether common questions exist; not to
determine whether class members could actually prevail on the
merits of their claims."  Ellis v. Costco Wholesale Corp., 657
F.3d 970, 983 n.8 (9th Cir. 2011) (citations omitted).
Defendants essentially ask the Court to "turn class
certification into a mini-trial[,]" but that is precisely what
the Court cannot do.  See id.

        Defendants further contend Plaintiffs have only
provided evidence from two out of eight DPS facilities and,
therefore, their claims are inadequately supported.  See, e.g.,
Mem. in Opp. at 8-9.  Plaintiffs have provided sufficient
evidence at this stage to "demonstrate[] the existence of the

challenged statewide policies and practices." See Parsons, 754 F.3d at 684 (footnote omitted). The Williamson Declaration describes events that Williamson witnessed while working at OCCC; it does not address other facilities. See generally Williamson Decl. The Mitchell Report discusses OCCC, Women's Community Correctional Center ("WCCC"), and HCF, but only addresses HCF in a cursory fashion. Furthermore, the Mitchell Report mentions those three facilities as they relate to potential policy violations during Fortson and Hampp's respective treatments. See generally Mitchell Report. Plaintiffs also submit declarations from five women incarcerated at WCCC, outlining their experiences, or others' experiences, with seeking treatment for a SMI or SPMI. See generally Yolken Decl., Exh. C (Decl. of Mele Gasologa), Exh. D (Decl. of Cianna Cruz-Wallace), Exh. E (Decl. of Barbara Fetuao), Exh. F (Decl. of Alice Faaifo), Exh. G (Decl. of Casey Hulihee). Plaintiffs additionally submit excerpts from Casey Hulihee's deposition transcript which discusses her observations related to Fortson's interactions with WCCC staff in seeking mental healthcare treatment. See generally id., Exh. I (excerpts of trans. of 1/19/21 depo. of Casey Hulihee ("Hulihee Depo. Trans.")).

Plaintiffs' failure to submit evidence relating to every DPS facility does not necessarily preclude a finding of commonality at this stage. "[T]he evidence needed to prove a

16

class's case often lies in a defendant's possession and may be obtained only through discovery. . . .  And transforming a preliminary stage into an evidentiary shooting match inhibits an early determination of the best manner to conduct the action." Sali, 909 F.3d at 1004.  Moreover, "[t]he district court's class certification order, while important, is also preliminary: 'An order that grants or denies class certification may be altered or amended before final judgment.'"  Id. (some citations omitted) (quoting Fed. R. Civ. P. 23(c)(1)(C)).  Thus, Plaintiffs provide sufficient evidence at the preliminary certification stage to support their contention that DPS's failure to follow formal policies was, and/or is, systemic.

Finally, Defendants argue Hampp is not a member of the proposed Class and, therefore, Plaintiffs cannot satisfy the commonality requirement.  [Mem. in Opp. at 13.]  "A litigant must be a member of the class which he or she seeks to represent **at the time the class action is certified by the district court.**"  Sosna v. Iowa, 419 U.S. 393, 403 (1975) (emphasis added) (citations omitted).  Plaintiffs allege Hampp was diagnosed with Bipolar I disorder in 2014.  [First Amended Complaint at ¶ 84.]  They also allege that, after Hampp's mother called OCCC to tell correctional staff that Hampp had bipolar disorder, Hampp received medication from OCCC staff to treat his bipolar disorder.  [Id. at ¶ 85.]  When Hampp was released from

17

OCCC in the summer or fall of 2017, he was not provided with a temporary supply of medication for his release.  Similarly, when Hampp was incarcerated again at OCCC in January 2018, he was not provided with medication for bipolar disorder, although his OCCC records showed that he had previously received medication for bipolar disorder.  [Id. at ¶¶ 86-87.]  Defendants state "Dr. Mitchell acknowledges that [Hampp's] [Bipolar Affective Disorder ('BPAD')] diagnosis 'cannot be substantiated.'"  [Mem. in Opp. at 13.]  Defendants also state "[t]he Dvoskin Report reaffirms that conclusion[,] finding that 'Dr. Lawson's consistent opinion that Mr. Hampp's symptoms did not meet the criteria for [BPAD] appeared to be reasonable.'"  [Id. (some alterations in Mem. in Opp.) (quoting Dvoskin Report at PageID #: 199).]  Dr. Mitchell opined that "[t]he two most consistent diagnoses that have been ascribed to Mr. Hampp are: Unspecified Personality Disorder and Poly Drug Use Disorder."  [Mitchell Report at PageID #: 520.]

SMI is defined as "[a] diagnosable mental disorder characterized by alterations in thinking, mood, or impaired behavior associated with distress and/or impaired functioning; primarily inclusive of schizophrenia, severe depression and bipolar disorder, and severe panic disorder, obsessive compulsive disorder, and post-traumatic stress disorder."  DPS Policy No. COR.10.1G.04 § 2.2.b.

18

Although Dr. Mitchell appears to doubt whether Hampp's BPAD diagnosis is accurate, Plaintiffs submitted four letters from John L. Myhre, Psy.D., sent to various entities, stating that he was treating Hampp for Bipolar Disorder I since 2014. See Plaintiffs' Supplemental Briefing Regarding Plaintiff Frank Hampp, filed 5/12/22 (dkt. no. 87), Decl. of Kevin A. Yolken ("Yolken Suppl. Decl."), Exh. C.[4] Plaintiffs' evidence suggests that Hampp was diagnosed and treated for bipolar disorder, which would meet the definition of SMI. Thus, Plaintiffs have provided sufficient evidence at this juncture to show that Hampp belongs to the proposed Class.[5]

In sum, although Defendants contest the veracity of Plaintiffs' evidence, the Court concludes that Plaintiffs' evidence is sufficient to determine that common questions exist among the proposed Class for all of their claims. Put differently, the truth or falsity of whether Defendants were

_____

[4] After the initial briefing for the Motion was submitted, the Court directed the parties to address Hampp's SMI status in supplemental briefing. See Minute Order – EO: Court Order Directing Parties to File Supplemental Briefing Regarding Plaintiff Frank Hampp, filed 5/5/22 (dkt. no. 86). Plaintiffs filed their supplemental briefing on May 12, 2022. [Dkt. no. 87.] Defendants also filed their supplemental briefing on May 12, 2022. [Dkt. no. 88.]

[5] Even if Hampp was not a member of the proposed Class, that alone would not necessarily prevent certification because Defendants do not contest Opulento's status as a member of the proposed Class.

deliberately indifferent to the treatment of DPS inmates with
SMI or SPMI "will resolve an issue that is central to the
validity of" Plaintiffs' Counts I through V "in one stroke."
See Wal-Mart, 564 U.S. at 350.  Plaintiffs therefore meet the
commonality requirement.

### C.   Typicality

The Ninth Circuit has formulated the typicality
requirement as follows:

> Rule 23(a)(3) requires that "the claims or
> defenses of the representative parties
> are typical of the claims or defenses of the class."
> "Under the rule's permissive standards,
> representative claims are 'typical' if they are
> reasonably coextensive with those of absent class
> members; they need not be substantially
> identical." Hanlon v. Chrysler Corp., 150 F.3d
> 1011, 1020 (9th Cir. 1998).  The test of
> typicality is "whether other members have the
> same or similar injury, whether the action is
> based on conduct which is not unique to the named
> plaintiffs, and whether other class members have
> been injured by the same course of conduct."
> Hanon v. Dataproducts Corp., 976 F.2d 497, 508
> (9th Cir. 1992).  Thus, "[t]ypicality refers to
> the nature of the claim or defense of the class
> representative, and not to the specific facts
> from which it arose or the relief sought." Id.
>
> As the Supreme Court recognized in Wal-Mart,
> Rule 23(a)'s commonality and typicality
> requirements occasionally merge: "Both serve as
> guideposts for determining whether under the
> particular circumstances maintenance of a class
> action is economical and whether the named
> plaintiff's claim and the class claims are so
> interrelated that the interests of the class
> members will be fairly and adequately protected
> in their absence."  131 S. Ct. at 2551 n.5. . . .

Parsons, 754 F.3d at 685 (brackets in Parsons).

Defendants state "Plaintiffs' claims are not typical
for similar reasons that their claims are not common." [Mem. in
Opp. at 14.] Defendants contend Plaintiffs do not provide
adequate evidence "to suggest that either proposed class
representative mental health care was negligent . . . ." [Id.
(citing Dvoskin Report at PageID #: 201).] Plaintiffs state
their claims are typical of the class because "every Class
member is highly likely to be subjected to the Defendants'
policies and practices relating to the provision of treatment
for the seriously mentally ill, and thus they are similarly
situated with respect to their near-certainty of exposure to a
substantial risk of serious harm from the DPS's policies and
practices." [Mem. in Supp. of Motion at 18–19.]

In Parsons, the Ninth Circuit held "that the district
court did not abuse its discretion in determining that the
plaintiffs ha[d] satisfied the typicality requirement of
Rule 23(a)[,]" 754 F.3d at 686, because the named plaintiffs
"[e]ach declare[d] that he or she [was] exposed, like all other
members of the putative class, to a substantial risk of serious
harm by the challenged . . . policies and practices[,]" id. at
685 (footnote omitted) (citing Hanon, 976 F.2d at 508). Here,
Plaintiffs allege DPS failed, and continues to fail, to follow
applicable policies for the treatment and management of inmates

with SMI or SPMI.  See, e.g., First Amended Complaint at ¶¶ 32-
33.  Plaintiffs further allege the proposed Class members "have
sustained similar injuries arising out of and caused by
Defendants' policies, practices, procedures, and
customs . . . ."  [Id. at ¶ 28.]

    "[G]iven that **every** inmate [with SMI or SPMI] in [DPS]
custody is highly likely to require . . . mental health . . .
care," Plaintiffs are "similarly positioned to all other [DPS]
inmates with respect to a substantial risk of serious harm
resulting from exposure to the defendants' policies and
practices governing [mental] health care."  See Parsons, 754
F.3d at 686 (emphasis in Parsons) (citation omitted).  In other
words, Plaintiffs "allege 'the same or [a] similar injury' as
the rest of the putative class; they allege that this injury is
a result of a course of conduct that is not unique to any of
them; and they allege that the injury follows from the course of
conduct at the center of the class claims."  See id. at 685
(alteration in Parsons) (footnote and citation omitted).
Accordingly, Plaintiffs satisfy the typicality requirement.

    D.   **Adequacy of Representation**

    The commonality and typicality requirements "tend to
merge with the adequacy of representation requirement, although
the latter requirement also raises concerns about the competency
of class counsel and conflicts of interest."  Wal-Mart, 564 U.S.

349 n.5 (quotation marks and citation omitted).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020 (citation omitted).

Defendants do not contest adequacy of representation. Furthermore, Plaintiffs and their counsel do not appear to have any conflicts of interest.  See, e.g., Yolken Decl. at ¶ 15. There is nothing before the Court to suggest that Plaintiffs and their counsel are unable to prosecute the action vigorously on behalf of the proposed Class.  The adequacy of representation requirement is therefore met.

## II.  **Rule 23(b)(2) Requirements**

In Wal-Mart, the Supreme Court summarized Rule 23(b)(2)'s requirements as follows:

> The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a **different** injunction or declaratory judgment against the defendant. . . .

23

131 S. Ct. at 2557 (citation omitted).  These
requirements are unquestionably satisfied when
members of a putative class seek uniform
injunctive or declaratory relief from policies or
practices that are generally applicable to the
class as a whole.  See Rodriguez v. Hayes, 591
F.3d 1105, 1125 (9th Cir. 2010).  That inquiry
does not require an examination of the viability
or bases of the class members' claims for relief,
does not require that the issues common to the
class satisfy a Rule 23(b)(3)-like predominance
test, and does not require a finding that all
members of the class have suffered identical
injuries.  See id.; Walters v. Reno, 145 F.3d
1032, 1047 (9th Cir. 1998).  Rather, as the text
of the rule makes clear, this inquiry asks only
whether "the party opposing the class has acted
or refused to act on grounds that apply generally
to the class."  Rule 23(b)(2).

Parsons, 754 F.3d at 687–88 (alteration and emphasis in Wal-

Mart) (footnote omitted).

Defendants argue Plaintiffs have not met the

Rule 23(b)(2) requirement because "[t]here is zero evidence of a

department wide practice that fails to provide adequate mental

health care."  [Mem. in Opp. at 15.]  Plaintiffs state they

"have established that DPS has a practice of failing to provide

even minimally adequate mental health services to the SMI

population in its facilities such that all Class members seek

the same relief . . . ."  [Mem. in Supp. of Motion at 22.]

According to Plaintiffs' allegations, Defendants exposed, and

continue to expose, all members of the proposed Class to a

substantial risk of serious harm because they failed to follow

formal DPS policies and implemented harmful policies, such as

placing inmates with SMI in solitary confinement instead of properly treating those individuals.  See, e.g., First Amended Complaint at ¶¶ 44, 118, 122, 138.c.  Plaintiffs offer some evidence to support those allegations.  See *supra* Discussion Section I.B.

> [B]y allegedly establishing systemic policies and practices that place every inmate [with a SMI or SPMI] in [DPS] custody in peril, and by allegedly doing so with deliberate indifference to the resulting risk of serious harm to them, the defendants have acted on grounds that apply generally to the proposed class . . . , rendering certification under Rule 23(b)(2) appropriate.

See Parsons, 754 F.3d at 688–89.  Moreover, Rule 23(b)(2) is met because "a single injunction or declaratory judgment would provide relief to each member of the class."  See Wal-Mart, 564 U.S. at 360.  For example, Plaintiffs allege Defendants failed to hire adequate mental health staff.  [First Amended Complaint at ¶ 138.a.]  An injunction requiring DPS to hire more mental health staff to effectively treat inmates with SMI or SPMI would provide a remedy on a class-wide basis.  See Parsons, 754 F.3d at 689.  Class certification pursuant to Rule 23(b)(2) is therefore appropriate here.

## III. Summary

Plaintiffs have "affirmatively demonstrate[d]" numerosity, commonality, typicality, and adequacy of representation at this juncture.  See Wal-Mart, 564 U.S. at 350.

Similarly, Plaintiffs have sufficiently established that certification under Rule 23(b)(2) is proper.  As such, certification of Plaintiffs' proposed Class is appropriate.

**CONCLUSION**

On the basis of the foregoing, Plaintiffs' Motion for Class Certification, filed February 11, 2022, is HEREBY GRANTED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 30, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

DONNA OPULENTO, ET AL. VS. STATE OF HAWAII DEPARTMENT OF PUBLIC SAFETY, ET AL; CV 19-00315 LEK-RT; ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION